**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

DAMARIS NAVARRO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 24-1509 (MEL)

**OPINION AND ORDER**

## I. PROCEDURAL AND FACTUAL BACKGROUND

Pending before the court is Ms. Damaris Navarro's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 10. On March 16, 2020, Plaintiff filed an application for Social Security benefits. Tr. 481–82. Plaintiff alleged that she initially became unable to work due to disability on February 25, 2020 (the "onset date"). Tr. 481. Prior to the onset date, Plaintiff's past relevant work was as a paramedic. Tr. 58, 84. Plaintiff's claim was denied on September 3, 2020, and again upon reconsideration on January 20, 2021. Tr. 102, 107.

Thereafter, at Plaintiff's request, a hearing was conducted on March 16, 2023, before Administrative Law Judge Luciannette Planas ("the ALJ").[1] Tr. 74–98. On June 1, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 49–60. Plaintiff filed a Request for Review of the ALJ decision on June 20, 2023. Tr. 476–79. The Appeals Council denied Plaintiff's request on September 11, 2024, rendering the ALJ's decision the final decision

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 49.

of the Commissioner, subject to judicial review. Tr. 1–4. Plaintiff filed a complaint on November 4, 2024. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 10, 14, 19.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986)

(per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) ("the Listings"). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III. The ALJ's Decision

In her decision dated February 10, 2023, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2025. Tr. 51. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of February 25, 2020. *Id.* At step two, the ALJ determined that Plaintiff had

the following severe impairments: generalized anxiety disorder, major depressive disorder, degenerative disc disease cervical with mild stenosis and significant neuroforaminal narrowing, lumbar osteoarthritis, interstitial cystitis, and moderate to severe bilateral hearing loss. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 52–54. Next, the ALJ determined that during the relevant period:

> [Plaintiff] claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours. The claimant can push and pull as much weight as she can lift and carry but limited to occasionally with the upper and/or /lower [sic] extremities bilaterally. The claimant can occasionally reach overhead to the left and/or to the right. The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never be exposed to moving mechanical parts, can never perform tasks that require perceiving the nature of sounds by ear, and she must be assigned to quiet work environments. The claimant retains the capacity to understand, remember, and carryout [sic] simple instructions, and is limited to deal with occasional changes in a routine work setting. She can interact with supervisors and coworkers frequently on one-to-one conversations, but she can never interact with the public due to bilateral hearing loss.

Tr. 54. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a paramedic. Tr. 58. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). Tr. 59. The VE testified that a hypothetical individual with a similar RFC would be able to perform representative occupations such as laundry sorter and routing clerk. *Id.* Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 60.

## IV. LEGAL ANALYSIS

Plaintiff alleges three main errors in the ALJ's decision. First, Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. ECF No. 10 at 8–10; ECF No. 19 at 2–4. Second, Plaintiff argues that the ALJ erred when she concluded that Plaintiff's mental

health impairment did not satisfy the criteria in Listing 12.04. ECF No. 10 at 11–13; ECF No. 19 at 4–5. Third, Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective complaints of pain, including by not sufficiently considering the *Avery* factors. ECF No. 10 at 13–15; ECF No. 19 at 5–7. Each contention will be addressed in turn.

**A. The ALJ's RFC Determination**

Plaintiff objects to the ALJ's RFC determination that Plaintiff could perform a reduced range of light work by claiming that it is not supported by substantial evidence. ECF No. 10 at 8–10; ECF No. 19 at 2–4. An ALJ makes her RFC determination by examining all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's description of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most she can do despite limitations from her impairments. 20 C.F.R. § 404.1545(a)(1). The claimant has the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Here, the ALJ considered the relevant medical evidence in the record in determining that Plaintiff could perform a reduced range of light work. First, she considered Plaintiff's testimony at the hearing, where she testified as to the following: she was unable to concentrate at work due to stress; she had "a rare condition of her bladder and has to get up frequently at work;" she suffered from inflammation "all the time;" she did not use hearing aids; she took medication that helped her mental impairments; she could walk for up to fifteen minutes; she could stand for up to fifteen minutes, she could sit for up to ten minutes; she could lift up to ten pounds; she could not lift her arms to take anything. Tr. 55, 88–91. Plaintiff further reported that she had difficulty "lifting, squatting, bending, standing, sitting, kneeling, climbing stairs, using her hands, reaching, following instructions, remembering, completing tasks, concentrating, and hearing." Tr. 55, 115–122, 138–144.

The ALJ also considered medical opinions and administrative medical findings in her decision. Tr. 57–58. In formulating Plaintiff's RFC, the ALJ was persuaded by and cited to the medical opinions of psychological consultative examiner Dr. Joanna Barbosa, clinical psychology, consultative examiner Dr. David Blas ("Dr. Blas"),[2] neurology, state agency medical consultant Dr. Nicolas Betancourt ("Dr. Betancourt"), and state agency medical consultant Dr. Ramón Ruiz ("Dr. Ruiz"). Tr. 57–58, 218–27, 303–06, 324–28, 706–09. Collectively, the examiners and consultants opined that, among other things, while Plaintiff had physical and mental impairments, she could still drive a car, sit, stand, walk as described, handle common objects, and "essentially perform light work with occasional push/pull in upper and lower extremities." Tr. 57–58, 227, 709.

Plaintiff objects to the weight the ALJ gave to the opinions of Dr. Betancourt and Dr. Ruiz because they were consultants rather than treating physicians. ECF No. 19 at 2–3. Previously, for cases filed before March 27, 2017, ALJs were required by the applicable regulations to afford "controlling weight" to the medical opinions from a plaintiff's "treating sources" absent special circumstances such as, for example, conflicting evidence or findings among treating physicians or conclusory remarks. 20 C.F.R. § 404.1527(c)–(c)(2). For cases filed on or after March 27, 2017, on the other hand, the updated regulation requires that ALJs not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Here, Plaintiff's argument relies on the reasoning set out in § 404.1527(c)–(c)(2), the older regulation. However, Plaintiff filed her claim on March 16, 2020, which is after March

[2] The ALJ noted that some of Dr. Blas's conclusions were "unsupported because they [were] vague and [did] not provide any functional limitations." Tr. 57. Accordingly, the ALJ found his opinion to be only somewhat persuasive. *Id.*

27, 2017. Tr. 481 Accordingly, § 404.1520c(a) applies, and the ALJ was free to assign more weight to the consultants' opinions than to those of the treating physician(s).[3]

Plaintiff also argues that the opinions of Dr. Betancourt and Dr. Ruiz should have been afforded less weight because they were given three and two years before the record was completed, respectively.[4] ECF No. 19 at 2–3. However, Plaintiff fails to identify any medical evidence submitted after the reconsideration process that would have made the consultants' opinions inaccurate or otherwise unreliable. This argument is not fully developed for the court's consideration. *See Handford ex rel. I.H. v. Colvin*, 2014 WL 114173, at *11 (N.D. Ill. Jan. 10, 2014) (noting in a Social Security appeal, "perfunctory and undeveloped arguments" are deemed waived). Hence, the ALJ's RFC determination is supported by substantial evidence.

**B. The ALJ's Listing 12.04 (Depressive, Bipolar, and Related Disorders) Determination**

Plaintiff next contends that the ALJ erred during step three because Plaintiff's impairments satisfied the criteria under Listing 12.04, Depressive, Bipolar, and Related Disorders ("Listing 12.04"). ECF No. 9 at 11–13; ECF No. 19 at 4–5; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Specifically, Plaintiff claims that she has marked limitations under all four functional areas of Listing 12.04 Paragraph B. ECF No. 9 at 12–13; ECF No. 19 at 4–5. At step three, a plaintiff bears the burden of proving her impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the [plaintiff]."); *see* 20 C.F.R. § 404.1520(d). To meet the criteria of a listing, a

[3] Plaintiff does not specify which treating physicians' opinions should have been afforded more consideration from the ALJ during the RFC determination.

[4] Plaintiff makes the same argument about state agency medical consultant Dr. Luis Umpierre; however, the ALJ had already noted that his opinion was "not persuasive." Tr. 58.

plaintiff's impairment must satisfy all the duration and objective medical requirements. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a [plaintiff] to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

To satisfy the criteria under Listing 12.04, a plaintiff must satisfy the requirements of Paragraph A and then satisfy the requirements of either Paragraph B or Paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. In this case, Plaintiff only challenges the ALJ's Paragraph B determination. Paragraph B requires a plaintiff to show an "[e]xtreme limitation of one, or a marked limitation of two, of the following areas of mental functioning:" (1) "[u]understand, remember, or apply information"; (2) "[i]nteract with others"; (3) "[c]oncentrate, persist, or maintain pace"; or (4) "[a]dapt or manage oneself." § 12.04(B). A marked limitation exists where a plaintiff's functioning in the area "independently, appropriately, effectively, and on a sustained basis is seriously limited." § 12.00(F)(2)(d).

Here, the ALJ found that Plaintiff exhibited moderate limitations in all four areas. Tr. 53. Regarding the first area, understanding, remembering, and applying information, Plaintiff asserts that she has marked limitations because she has "difficulty remembering generally, following instructions, and completing tasks." ECF No. 10 at 12; ECF No. 19 at 4. Moreover, she claims her level of intelligence is less than expected for her age and education, and that her attention is not maintained all the time. *Id.* However, the fact that some medical evidence might support one conclusion does not preclude the ALJ from making a different one. *See Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam) (citation omitted) (holding that ALJ's decision must be affirmed "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence"). Here, the ALJ considered

Plaintiff's evidence when finding a moderate limitation. Tr. 53, 56–57. Because the record also indicated that Plaintiff could do things like make simple meals, pay bills, drive, provide information about her health, and respond to questions from medical providers, the ALJ determined that a moderate limitation, rather than a marked limitation, was appropriate. Tr. 53, 117–18.

Next, Plaintiff contends that she has marked limitations in interacting with others because she has difficulty engaging in social activities and otherwise has trouble maintaining relationships. ECF No. 10 at 12–13; ECF No. 19 at 4–5. Like the first area, Plaintiff reiterates why she believes she has marked limitations without specifying how the ALJ was incorrect. The ALJ again essentially addressed those facts, taking note of Plaintiff's allegation that she "has difficulty engaging in social activities." Tr. 53. However, the ALJ contrasted those facts with Plaintiff's ability to live together with her husband and medical opinions that described her as "pleasant and cooperative." *Id.*

In the third area, the ability to concentrate, persist, or maintain pace, Plaintiff argues that she has marked limitations because of her difficulty concentrating, sleeping, following instructions, thinking, and remembering. Tr. 53, 120. However, the ALJ classified her limitations as moderate because Plaintiff said she can still drive and prepare simple meals. Tr. 53, 117–18. While it is clear how driving and preparing meals are related to concentrating, the nexus, if any, between these tasks and persisting and maintaining pace is less obvious.

Finally, regarding the ability to adapt or manage oneself, Plaintiff contends that she has marked limitations because she has difficulty managing changes, her mood, and her appearance. ECF No. 10 at 13; ECF No. 19 at 5. The ALJ found that Plaintiff has moderate limitations in this area because Plaintiff stated that she can keep up with her personal hygiene and get along with her

husband, while the rest of the record reflects that she had "appropriate grooming and hygiene." Tr. 53, 117–18, 266, 270, 274, 279, 283.

Undergirding her Paragraph B arguments, Plaintiff notes that treating psychiatrist Dr. Pedro Oyola Nieves ("Dr. Oyola") gave her a negative prognosis, opining, among other things, that she was "[n]ot able to perform any type of remunerative work, deal with supervisors, or complete even ½ hour of a normal day's work." Tr. 767; ECF No. 10 at 11–12. However, as discussed above, the ALJ was not required to grant Dr. Oyola's medical opinions any heightened weight by virtue of his status as a treating physician. *See supra* pp. 7–8. This is especially the case when the medical opinions were inconsistent with themselves and the record, as the ALJ found here. Tr. 57. The ALJ pointed out that Dr. Oyola opined that Plaintiff had on the one hand "poor judgment, impaired immediate memory, anxious mood, and appeared distracted," while on the other, she was cooperative, had a logical thought process, normal thought content, and normal insight. Tr. 57, 766–67, 816–17. Between these observations, it is difficult to reconcile Plaintiff's poor judgment with her logical thought processes and normal insight. The ALJ also found that Dr. Oyola's opinions conflicted with the record, which shows that despite Plaintiff's "depressed and anxious mood, abnormal memory, and thought content, she had normal mental status findings." Tr. 57, 227, 266, 270, 274–75, 279, 283. Although the ALJ did not find persuasive the characterization by state agency psychological consultants Dr. Luis Umpierre and Dr. Wanda De Cordona of Plaintiff's limitations as mild and instead found them to be moderate, these consultants' opinions further underscore how Dr. Oyola's conclusions are at odds with other portions of Plaintiff's record. Tr. 58, 301, 320.

Paragraph B requires marked limitations in two areas or an extreme limitation in one.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B). Thus, even if Plaintiff is correct that the ALJ's determination in the ability to concentrate, persist, or maintain pace was wrong and that Plaintiff has marked limitations in this functional area, this still falls short of showing marked limitations in at least two areas. *See Ward v. Apfel*, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999) (citing *Pérez Torres v. Sec'y of Health and Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)) ("The First Circuit has applied a 'harmless error' rule in Social Security benefit cases."). The ALJ's Listing 12.04 determination is supported by substantial evidence.

**C. The ALJ's Evaluation of Plaintiff's Subjective Complaints of Pain**

Plaintiff's final objection again challenges the ALJ's RFC determination, but this time argues that the ALJ incorrectly discounted Plaintiff's subjective complaints of pain and failed to meaningfully discuss the *Avery* factors. ECF No. 10 at 15. When evaluating a plaintiff's subjective complaints of pain, the ALJ must consider the *Avery* factors. *See Vargas-López v. Comm'r of Soc. Sec.*, 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The *Avery* factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

*Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19, 28 (1st Cir. 1986). The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." *Amaral v. Comm'r of Soc. Sec.*, 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted).

---

[5] Plaintiff has not argued that her limitations in any functional area are extreme.

Here, "[a]lthough the ALJ did not mechanically enumerate each factor, [her] opinion and the transcript of the hearing show a full consideration of the factors." *González v. Comm'r of Soc. Sec.*, Civ. No. 14-1669, 2016 WL 1171511, at *3 (D.P.R. Mar. 24, 2016); *see Mercado v. Comm'r of Soc. Sec.*, 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("a failure to address all of the *Avery* factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Regarding the first two factors, the nature of the pain and aggravating factors, Plaintiff testified at the hearing held on March 16, 2023, that she has pain in her cervical and lumbar spine areas which gets worse when lifting and bending. Tr. 87, 90–91. She further testified that she experiences cervical pain "all the time" at an eight out of ten level. Tr. 91. The ALJ noted tenderness in Plaintiff's cervical and lumbar spine five times in her decision. Tr. 55–58. The ALJ also heard Plaintiff's testimony regarding her pelvic pain and found that she had interstitial cystitis. Tr. 51, 88.

The third factor concerning Plaintiff's pain medication was considered by the ALJ when she noted that Plaintiff's medication helped her impairments. Tr. 55, 57. The ALJ also pointed out that on some occasions, Plaintiff did not take her medication. Tr. 56. The fourth factor deals with treatment other than medication. While it was not discussed in the ALJ's decision, Plaintiff testified at the hearing that she was recommended to have surgery and that she was taking steps to do so. Tr. 87–88.

Next, the ALJ considered the fifth factor, functional limitations, when Plaintiff testified that she was unable to stoop or crouch well, stand and walk for more than ten or fifteen minutes, sit for more than five or ten minutes, or lift more than eight or ten pounds. Tr. 90. Moreover, Plaintiff's function reports, cited by the ALJ, state that Plaintiff's impairments affect her ability to lift five pounds, get up, squat, bend, stand, sit, kneel, climb stairs, use her hands, or lift her arms to grab things. Tr. 56, 91, 120, 140, 143. Regarding the sixth factor, activities of daily living, the ALJ

noted in her decision that despite her impairments, Plaintiff self-reported an ability to prepare simple meals, drive, and pay bills. Tr. 56, 117–18. Further, even with her moderate to severe bilateral hearing loss, Plaintiff was able to have a conversation over the telephone. Tr. 12, 76–91. Thus, the ALJ considered the *Avery* factors in her decision.

## V. CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits contained was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of September 2026.

s/Marcos E. López
U.S. Magistrate Judge